UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

| | |
|---|---|
| JESSICA TOWNS on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |
| v. | |
| BEAUTIFUL DISASTER CLOTHING, LLC | |
| Defendant. | |

------------------------------------------------------------------

Plaintiff, JESSICA TOWNS ("Plaintiff" or "Ms. Towns"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, BEAUTIFUL DISASTER CLOTHING, LLC, ("Beautiful Disaster" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using her computer. Ex. A – JESSICA TOWNS, Legally Blind Diagnosis, dated 1/4/2025. Plaintiff uses the terms "blind" or "visually-impaired," as Plaintiff's central visual acuity with correction is less than or equal to 20/200. Some sight-impaired individuals who meet this definition have limited vision, while others have zero vision. Ms. Towns has been diagnosed with bilateral optic nerve hypoplasia and retinopathy of prematurity, resulting in permanent central vision loss. Her condition is non-correctable and

qualifies as legal blindness under federal standards.

2.      Plaintiff, Jessica Towns is legally blind and relies on screen-reading software—specifically NVDA (Nonvisual Desktop Access)—to navigate digital interfaces. On multiple occasions in July and August 2025, Towns attempted to access Defendant's public-facing website, www.bdrocks.com, to research clothing products, sizing guides, promotional offers, and checkout functionality. Despite Beautiful Disaster's public branding around empowerment and inclusivity, Towns was repeatedly denied meaningful access due to widespread accessibility barriers. These barriers included unlabeled form fields, missing alt text on product images, and broken navigation links that rendered the site unusable with her assistive technology.

3.      Defendant BEAUTIFUL DISASTER CLOTHING, LLC is a retail apparel company headquartered in California. It operates www.bdrocks.com, which serves as its primary platform for product display, e-commerce transactions, promotional campaigns, and customer engagement. Beautiful Disaster does not operate physical retail stores and relies on its digital infrastructure to distribute proprietary apparel and coordinate customer service through its website.

4.      Plaintiff seeks injunctive and declaratory relief to compel Defendant to remediate its website, implement accessibility monitoring, and adopt policies that ensure blind and visually impaired users can access its services with independence, dignity, and equity.

5.      Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and

2

visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

6.      Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, et seq.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

9.      Venue is proper in this District under 28 U.S.C. §1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District, via the Internet and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website, www.bdrocks.com, within her home in Bronx County, New York, located within this Judicial District.

10.     Beautiful Disaster Clothing, LLC is a retail apparel company headquartered in California. It operates exclusively through its digital storefront, www.bdrocks.com, which serves as its primary platform for product display, e-commerce transactions, promotional campaigns, and customer engagement. Beautiful Disaster does not operate physical retail stores and relies entirely on its website to distribute proprietary apparel and coordinate customer service. Despite its public messaging around empowerment and inclusivity, the website remains inaccessible to blind users, undermining its stated values and violating federal accessibility standards.

11.     Because Defendant's website is directly tied to the full use and enjoyment of its digital services, and because Plaintiff resides in Bronx County and attempted to transact with Defendant's services from within the Southern District of New York, venue is proper, and jurisdiction is established.

12.     Plaintiff seeks declaratory and injunctive relief to compel Defendant to remediate its website, implement ongoing accessibility monitoring, and ensure compliance with Federal, State and City Laws, Statutes and Regulations. It must be born in mind that this action is not merely seeking technical compliance—it is a demand for dignity, equity, and lawful access to essential services.

13.     Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past and now deter Plaintiff regularly from accessing the Defendant's Website www.bdrocks.com in the future.

14.     The United States Department of Justice Civil Rights Division has recently stated

4

that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." (See Guidance on Web Accessibility and the ADA) Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access or "NVDA."

15.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## NATURE OF ACTION

16.     The Internet is a vital tool for accessing consumer goods and services, especially for blind and visually impaired individuals. Screen-reading software allows users to navigate websites using auditory cues and keyboard commands. For this technology to function, websites must be coded with semantic structure, ARIA roles, and accessible markup. Defendant's websites fail to meet these standards. Common barriers include:

- Broken links to affordability programs and medication resources
- Unlabeled form fields and buttons
- Non-descriptive link text
- Keyboard traps and inaccessible modal dialogs
- Improper heading structure
- Dynamic content not announced to screen readers

These barriers exclude blind users from accessing essential pharmaceutical services and violate the ADA's mandate for equal access.

17.     In today's tech-driven world, blind and visually impaired people rely on screen-reading software to independently access websites. This software vocalizes visual content or displays it on a refreshable Braille display. Unless websites are designed to be compatible with

screen-reading software, blind and visually-impaired persons are unable to fully access the information, products, and services contained thereon.

18.    Plaintiff, Jessica Towns uses Nonvisual Desktop Access ("NVDA")—a free, widely adopted screen-reader for Windows computers. NVDA is her daily tool for accessing the internet, including retail websites such as [www.bdrocks.com](www.bdrocks.com)..

19.    For screen-reading software to function, website content must be capable of being rendered into text. If it cannot, blind users are denied access to the same content available to sighted users.

20.    Screen readers interpret digital content using rules and expectations about structure and semantics. They rely on text-to-speech (TTS), Braille output, and other mechanisms to present screen content. If websites lack proper markup, ARIA roles, or accessible design, these tools fail.

21.    The World Wide Web Consortium ("W3C") publishes the Web Content Accessibility Guidelines ("WCAG"), currently at version 2.1. These guidelines are the global standard for digital accessibility and are followed by major corporations and government agencies to ensure compliance.

22.    Non-compliant websites pose recurring barriers to blind and visually impaired persons. Common violations include:

a.    A text equivalent for every non-text element is not provided;

b.    Title frames with text are not provided for identification and navigation;

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sighted persons are not provided;

6

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.    Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.    If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.    Web pages do not have titles that describe the topic or purpose;

i.    The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.    One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.    The default human language of each web page cannot be programmatically determined;

l.    When a component receives focus, it may initiate a change in context;

m.    Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.    Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDF); and

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

23.     Websites are dynamic platforms, updated daily or hourly. A one-time fix does not ensure lasting accessibility. Defendant must adopt ongoing monitoring protocols, including automated testing and live-user audits by disabled individuals, to ensure sustained compliance.

## STANDING

24.     Plaintiff, Jessica Towns, is a blind, visually-impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., and NYCHRL. To access the Internet, she must utilize a computer equipped with screen-reading software, such as NVDA for Windows.

25.     Screen-reading software translates visual web content into auditory output. As explained in Andrews v. Blick Art Materials, LLC, 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017), screen readers use auditory cues to replicate the visual experience of navigating a website. When properly coded, links are announced as "clickable," and users can interact with content using keyboard commands.

26.     Beautiful Disaster Clothing operates exclusively through its website, www.bdrocks.com, which serves as its sole platform for product display, e-commerce, promotions, and customer engagement. The company does not maintain any physical retail stores. For blind users like Plaintiff, this digital storefront is the only means of accessing Defendant's products and services.

27.     Despite Defendant's branding around empowerment and inclusion, its website contains persistent accessibility barriers that exclude blind users. These include unlabeled form fields, non-descriptive buttons, broken links, inaccessible modal dialogs, and improper heading structure. These barriers obstruct Plaintiff's ability to browse products, complete purchases, and

8

engage with promotional content.

28.     Plaintiff attempted to access www.bdrocks.com on multiple occasions in July and August 2025 to shop for apparel and accessories. She encountered the same barriers each time, including checkout fields that lacked labels, buttons announced only as "button," and rotating carousels that moved without pause controls. These failures rendered the site unusable with her screen reader.

29.     Plaintiff remains actively interested in returning to www.bdrocks.com to complete purchases and access promotional offers. Her intent to return is driven by necessity, not convenience. The exclusion she experienced is repeatable, documented, and unresolved.

30.     A technical audit of www.bdrocks.com was conducted on August 18, 2025, using PowerMapper's SortSite Accessibility Checker. The audit confirmed Plaintiff's firsthand experience and identified violations including:

- Missing alt. text on product images
- Non-descriptive link text
- Unlabeled form fields in checkout and login
- Keyboard traps and inaccessible modal dialogs
- Improper heading structure

**(See Ex. C – Audit Reports**

31.     These barriers are not isolated glitches. They reflect systemic design failures that deny Plaintiff the ability to shop independently. The absence of semantic structure, ARIA roles, and keyboard operability violates WCAG 2.1 Level AA and constitutes unlawful discrimination under Title III of the ADA, 42 U.S.C. § 12182.

32.    Plaintiff alleges that Defendant has engaged in intentional discrimination through the following practices:

a. Constructing and maintaining a website inaccessible to visually-impaired individuals

b. Failing to implement intuitive design for equal access

c. Failing to remediate barriers despite documented harm.

33.    Defendant's standards and methods of administration perpetuate discrimination against blind users.

34.    The ADA expressly authorizes injunctive relief under 42 U.S.C. § 12188(a)(2), including orders to modify facilities and policies to ensure accessibility.

35.    Plaintiff seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist with WCAG 2.1 compliance. The injunction should require Defendant to:

a. Train developers on accessibility standards

b. Conduct regular WCAG audits

c. Test accessibility with blind users

d. Publish an accessibility policy with contact information

36.    Although Defendant may have general policies for website maintenance, it lacks a plan reasonably calculated to ensure equal access for blind users.

37.    Upon information and belief, Defendant has invested substantial resources in its website and generates significant revenue from online sales. The cost of remediation is minimal compared to the harm caused.

38.    Plaintiff reviewed the website for accessible contact options to report these barriers. The absence of a screen-reader-compatible support form or alternative outreach mechanism violates 28 C.F.R. § 36.303(c)(1) and 42 U.S.C. § 12182(a). This omission reflects systemic exclusion, not mere oversight.

39.    Defendant uses standards, criteria, and methods of administration that have the effect of discriminating against and perpetuating the exclusion of blind and visually impaired individuals, including Plaintiff. These practices are not isolated technical oversights; they reflect systemic neglect of accessibility obligations under federal and local law.

40.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA provides: "In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . ." 42 U.S.C. § 12188(a)(2).

41.    Because Defendant's website has never been equally accessible, and because Defendant lacks a corporate policy reasonably calculated to cause the site to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant in complying with WCAG 2.1 guidelines. Plaintiff requests that this injunction require Defendant to:

a. Train developers and content managers on accessibility compliance under WCAG 2.1

b. Conduct regular accessibility audits using automated tools and live-user testing

c. Implement a feedback mechanism compatible with screen readers

d. Publish an accessibility policy with contact information for reporting barriers

11

42.     Although Defendant may maintain centralized policies for operating its website, it lacks any plan or protocol reasonably calculated to ensure equal access for blind users. The absence of semantic structure, ARIA roles, and keyboard operability is not a matter of ignorance—it is a failure of prioritization.

43.     Upon information and belief, Defendant has invested substantial resources in developing and maintaining bdrocks.com and generates significant revenue from its online sales. These amounts far exceed the cost of remediation. Without injunctive relief, Plaintiff and other blind consumers will continue to be excluded from the only channel through which Defendant offers its products.

44.     Plaintiff reviewed the website for any accessible means of contact to report the barriers encountered. The absence of a screen-reader-compatible support form or alternative outreach mechanism violates 28 C.F.R. § 36.303(c)(1) and 42 U.S.C. § 12182(a). This omission denied Plaintiff the opportunity to engage with Defendant's services on equal terms and reflects systemic exclusion from its digital infrastructure.

45.     Plaintiff remains actively interested in returning to www.bdrocks.com to complete purchases and engage with the brand's promotional content. Her motivation is not speculative—it is rooted in a personal connection to Beautiful Disaster's messaging around resilience, defiance, and identity. The brand's apparel features slogans and designs that resonate with Plaintiff's lived experience as a blind woman navigating a world that often overlooks disability. Products such as the "Phoenix 6 Zip Hoodie," "Don't Fix Me Scoop Tee," and "F*ck Perfection Slashback Tank" reflect themes of empowerment and authenticity that Plaintiff finds uniquely affirming.

46.     Beautiful Disaster does not operate physical retail stores. Its website is the exclusive

channel for browsing, purchasing, and engaging with the brand. Plaintiff's intent to return is driven by both necessity and emotional connection. She seeks to access the same products, promotions, and community engagement opportunities that sighted users enjoy. The barriers she encountered are repeatable, unresolved, and prevent her from participating in the brand's offerings with independence and dignity.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff, JESSICA TOWNS on behalf of herself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

48.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

49.     Common questions of law and fact exist amongst the Class, including:

   a.     Whether Defendant's Website is a "public accommodation" under the ADA;

   b.     Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

   c.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

13

      d.     Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

50.    Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

51.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

52.    Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

53.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

54.    Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted

to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

55.     Plaintiff, JESSICA TOWNS on behalf of herself and the Class Members, repeats and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

56.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

57.     Defendant's  Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

58.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

59.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or

15

accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

60.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

61.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

62.     Plaintiff, JESSICA TOWNS on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful

16

discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

64.     Defendant is subject to NYCHRL because it owns and operates the Website www..lilly.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

65.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

66.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

67.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

            a.      constructed and maintained a Website that is inaccessible to blind class

members with knowledge of the discrimination; and/or

    b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

68.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

69.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

70.    Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

71.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

72.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

73.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

74.

## THIRD CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

75.     Plaintiff, JESSICA TOWNS on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

77.     Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

78.     Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

79.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

80.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person

19

any of the accommodations, advantages, facilities or privileges thereof."

81.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

82.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

83.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

84.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

85.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

86.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

87.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

### FOURTH CAUSE OF ACTION
**(Violation of New York State Civil Rights)**
**("NYCRL")**

88.     Plaintiff, JESSICA TOWNS on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

21

90.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

91.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

92.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

93.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

94.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

95.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

22

96.     Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

97.     Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

98.     Plaintiff, JESSICA TOWNS on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

99.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

100.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

23

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.   A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.   An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.   Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.   Pre-judgment and post-judgment interest;

g.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.   Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      September 19, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*Robert Schonfeld*

_____
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com